IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tesa Whitney Price,                :

          Plaintiff,               :

     v.                            :          Case No. 2:15-cv-3044

                                   :          JUDGE GEORGE C. SMITH
Commissioner of Social Security,       Magistrate Judge Kemp

          Defendant.               :

### REPORT AND RECOMMENDATION

### I.  Introduction

     Plaintiff, Tesa Whitney Price, filed this action seeking
review of a decision of the Commissioner of Social Security
denying her application for disability insurance benefits.  That
application was filed on September 19, 2014, and alleged that
Plaintiff became disabled on June 28, 2014.  She later amended
that onset date to January 1, 2013.

      After initial administrative denials of her claim,
Plaintiff was given a hearing before an Administrative Law Judge
on June 11, 2015.  In a decision dated June 30, 2015, the ALJ
denied benefits.  That became the Commissioner's final decision
on September 25, 2015, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on February 2, 2016.  Plaintiff filed a
statement of specific errors on July 5, 2016, to which the
Commissioner responded on August 25, 2016.  Plaintiff filed a
reply brief on September 6, 2016, and the case is now ready to
decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

     Plaintiff, who was 21 years old as of the date of the
hearing and who is a high school graduate, testified as follows.

Her testimony appears at pages 47-73 of the administrative record.

Plaintiff was first asked about her living situation.  She explained that she was able to stay at a home for disabled veterans in exchange for spending about twenty hours per week helping out with chores.  She also paid a small amount of rent.  She had a driver's license and drove to appointments or to the store.

The last job Plaintiff held was as a cashier at a Dollar Tree store, which was only a part-time job during the holiday season.  She had done babysitting before that and had also worked at McDonald's, a job she quit to take a position as a dietary aide at a nursing home.  She left that job after three or four days because she did not like it.  Plaintiff said she had been a marijuana user but quit the same day she sustained an injury at work.  She worked for a short time at Goodwill Industries as well but quit because she did not get along with her co-workers.

Plaintiff said that her anxiety kept her from working.  It could cause her to shake and not to recognize people that she knows.  She also described depression and PTSD which interfered with her ability to remember.  She took medications for these conditions but stopped taking them even though they helped her.  However, they had been replaced by other medications which made her feel better.  She was still fearful of being assaulted at a job situation, however.  Additionally, she was constantly angry and reacted verbally and, at times, physically.

Finally, Plaintiff testified about her high school experience.  She left regular high school due to anxiety and enrolled in ECOT, where she was able to make up her schoolwork.  She said she could do schoolwork from morning until night, and she was also working part-time.

### III.  The Medical Records

-2-

The pertinent medical records are found beginning at page
222 of the record and can be summarized as follows.  Since the
statement of errors focuses on Plaintiff's psychological
conditions, and particularly the opinion of her treating source,
the Court's summary of the records will be limited to those
conditions as well.

The first record in the file is an individual service plan
showing that Plaintiff had been diagnosed with depression (major
depressive disorder, recurrent, severe, with psychotic features)
and a personality disorder.  She was to be treated with
individual psychotherapy and case management.  Her GAF was rated
at 52, and she was to develop coping skills to help manage her
emotions and behavior more effectively.  (Tr. 222-26).

Plaintiff was treated on August 3, 2013, at the emergency
room for a Seroquel overdose, apparently part of a suicide
attempt.  She had attempted suicide in the past.  She was then
transferred in good condition to Fairfield Medical Center and
discharged on August 8, 2013, with instructions to follow up with
her previous outpatient providers. (Tr. 230-38).

Next, there are treatment notes from the New Horizons Youth
& Family Center from 2013 and 2014.  In January, 2013, Plaintiff
was described as "doing much better" both in her sleep and her
moods.  Similar comments are made in the February, 2013 note.
The note after her hospitalization in August, 2013 said that she
was feeling better and had gone back to work.  By October, she
reported feeling worse because she had cut back on her
medications for financial reasons.  However, by the time of her
two 2014 appointments her symptoms had improved and she described
herself as "mostly happy."  (Tr. 482-97).  In the next set of
notes (Tr. 522-27), Plaintiff reported being stressed and anxious
due to financial worries and said she had trouble coping in the
work environment.  She had obtained a job with Dollar Tree by

December, 2014.  There are also a large number of session noted from Plaintiff's counselor and social worker at Mid-Ohio Psychological Services.

Plaintiff's primary treatment source was Dr. Black.  On February 3, 2015, he completed a form indicating that Plaintiff satisfied the criteria for disability under Sections 12.04 and 12.06 of the Listing of Impairments.  He attributed her symptoms to major depressive disorder and PTSD.  (Tr. 529-32).  He also completed a residual functional capacity form by stating that she had moderate limitations, which the form defined as being "'Off task' in the ability to function in this area for 25% of an 8-hour workday," in six work-related areas.  The areas included completing a normal workday and work week without interruption from psychologically-based symptoms, performing at a consistent pace, maintaining attention, concentration, and regular attendance, working around others, interacting with the public, and responding appropriately to supervision.  (Tr. 534).

Finally, Plaintiff's residual functional capacity was assessed by state agency reviewers.  Dr. Goldsmith found a number of moderate limitations but concluded that Plaintiff could do routine tasks with infrequent changes, could tolerate occasional and superficial interpersonal contact, and could perform simple tasks that were not fast-paced or had unusual production demands. (Tr. 90-92).  Dr. Haskins, the second reviewer, reached basically the same conclusions.  (Tr. 102-03).

IV.  The Vocational Testimony

Lynne Kaufman was called to testify as a vocational expert at the administrative hearing.  Her testimony begins at page 74 of the administrative record.

Ms. Kaufman first testified about Plaintiff's past work. She said that the fast food worker job was light and unskilled, as was the cashier position, and the dietary aide job was medium

and unskilled.

Next, Ms. Kaufman was asked some questions about someone with Plaintiff's background and who could work at any exertional level but could not hold a position requiring strict production quotas or fast-paced work such as on an assembly line, and who could have only occasional and superficial interaction with the general public and coworkers.  Ms. Kaufman said that someone with those restrictions could do the dietary aide job, and could also work as a cleaner, laundry worker, or packer.  If the person needed to have visual contact with a supervisor at all times, however, neither these nor other jobs would be available.  The same would be true if the person were off task for ten percent of the time or would miss two days of work per month on a regular basis.

Last, Ms. Kaufman was asked if someone who was limited as described in Dr. Black's questionnaire could work.  She said those restrictions precluded work in a competitive environment.

## V.    The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 20-35 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016.  Second, he found that Plaintiff had not engaged in substantial gainful activity since her amended onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including major depressive disorder with psychotic features, anxiety disorder, posttraumatic stress disorder, and borderline personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404,

Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation
process, the ALJ found that Plaintiff had the residual functional
capacity to perform work at all exertional levels.  However, she
could only work in an occupation which did not require strict
production quotas or fast-paced work such as on an assembly line
and she could only have occasional and superficial interaction
with the general public and with coworkers.

With these restrictions, the ALJ concluded that Plaintiff
could perform her past job as a dietary aide and that she could
also perform the jobs identified by the vocational expert,
including cleaner, laundry worker, and packer.  The ALJ further
determined that these jobs existed in significant numbers in the
state and the national economy.  Consequently, the ALJ decided
that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a
single issue:  the ALJ improperly weighed the opinions of the
treating psychiatrist, Dr. Black.  This issue will be evaluated
under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th

-6-

Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

When a challenge is made to the ALJ's decision to give less than controlling weight to the opinion of a treating source, it is necessary to set forth the basis for that decision in detail. The Court's analysis will begin there.

As a general introduction to his discussion of the treating source opinion, the ALJ commented that "[t]he medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations" and the they do not "support the existence of any greater mental limitations than those established in this decision." (Tr. 27).  He then summarized Plaintiff's testimony and her functional report and determined that while her functional capacity had "certainly been impacted by her mental impairments" the "totality of the medical evidence" did not support the severity and frequency of symptoms which she alleged.  (Tr. 28).  He supported this statement with reference to the fact that Plaintiff generally recovered well from any serious episodes like hospitalization and did well with treatment.  Further, her care had been "relatively routine and conservative overall" and that when she took medications, they generally helped her, leading to many treatment notes where she

was described as mostly happy or without significant
psychological abnormalities.  (Tr. 28-29).

    The ALJ then turned to a discussion of the opinion evidence.
He first gave some weight to the state agency reviewers' opinions
because they were "consistent with and ... supported by the
evidentiary record as a whole" and because they were "not
credibly contradicted by any source shown to be familiar with SSA
and its medical and/or occupational standards."  (Tr. 29).  With
respect to the questionnaires filled out by Dr. Black, the ALJ
assigned little weight to the opinion that Plaintiff's symptoms
satisfied Section 12.04 of the Listing of Impairments, noting
that the other questionnaire demonstrated no more than moderate
limitations in various areas of functioning and that such extreme
limitations were "not consistent with his own office notes" or
with the objective medical evidence in totality.  (Tr. 30).
However, he assigned "some weight to the portion of Dr. Black's
opinion that the claimant's mental impairments result in moderate
limitations, as such conclusions are consistent with and
supported by the evidentiary record as a whole."  Id.  Lastly, he
gave little weight to the opinions of the counselors because they
are not medical sources.  He made a separate determination that
Plaintiff led a "seemingly full and active life" and had
demonstrated the mental capability to perform tasks and engage in
social interactions, and pointed out that she had also applied
for jobs after her onset date, suggesting that her inability to
obtain work was a factor in her decision to apply for benefits.

    In her statement of errors, Plaintiff focuses only on Dr.
Black's opinion about the six moderate limitations he identified,
and not on his conclusions about the Listing of Impairments.  She
notes that the ALJ gave some weight to that former opinion,
concluding that it was consistent with the record as a whole, but
at the same time, he appeared not to appreciate the fact that the

definition of "moderate" on the questionnaire itself stated that a moderate impairment is one which prevents someone from performing that activity 25% of the time, and he appeared to disregard the vocational expert's testimony that someone with the "moderate" limitations identified by Dr. Black could not work competitively.  Consequently, she contends that a remand is in order.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

In response to Plaintiff's argument, the Commissioner contends that the ALJ did not give controlling, great, or even substantial weight to Dr. Black's opinion about moderate

impairments, and therefore committed no error by formulating a residual functional capacity that differed from Dr. Black's findings.  In her reply, Plaintiff contends that the Commissioner's argument is not really responsive because it does not address the fact that the ALJ likely misunderstood Dr. Black's opinion; having not understood the opinion properly, the ALJ could not have considered it correctly under the "treating physician" rule.  She argues that the ALJ's misunderstanding "has led to evidence **supporting** disability being placed into the category of evidence **disproving** disability."  Doc. 22, at 2.

    Plaintiff has the better of this argument.  Nothing in the administrative decision shows that the ALJ understood that the way in which Dr. Black used the term "moderate" - which was dictated by the form he was asked to complete - differed substantially from the way that term is usually defined in the context of a disability claim.  As this Court has observed, "a 'moderate limitation' ... is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'" Ziqqas v. Colvin, 2014 WL 1814019, *6 (S.D. Ohio May 6, 2014).  On the other hand, a "marked" limitation typically describes one which is "more than moderate [as normally used] but less than extreme" and which "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis."   See Listing of Impairments, Section 12.00(C).  Clearly, the way Dr. Black used the term "moderately" is much more like what the Social Security Administration means by "marked" - and that is consistent with his determination that Plaintiff met the requirements of Listing 12.04, which requirements are satisfied only by the presence of marked limitations.  He did not mean, as the vocational expert testified, to imply that Plaintiff's "moderate" limitations still permitted her to function satisfactorily in those areas, because being off task 25% of the time is not vocationally

"satisfactory."  Yet, as Plaintiff points out, the ALJ considered
Dr. Black's opinion about moderate limitations to contradict his
opinion about Listing 12.04, and also described the former
opinion as consistent with the evidence - which, as Plaintiff
notes, would suggest that it should have been given controlling
weight since that is the general standard for evaluating and
weighing the opinions of treating sources.

        Perhaps the ALJ did understand the difference between Dr.
Black's use of the term "moderate" and the usual meaning ascribed
to that term in social security cases.  And perhaps he still
concluded that Dr. Black's opinion overstated the degree of
Plaintiff's limitations.  But to reach that conclusion on this
record would be sheer speculation, and the Court cannot sustain a
decision on that basis.  See, e.g., Roso v. Comm'r of Social
Security, 2010 WL 1254831, *16 (N.D. Ohio March 11, 2010)("The
treating source rule requires the Commissioner to articulate his
reasons for discounting these opinions. The Commissioner's post
hoc rationalization at this stage is insufficient."), adopted and
affirmed 2010 WL 1254833 (N.D. Ohio March 25, 2010).  Plaintiff
is entitled to a more specific explanation of whether the ALJ
understood that Dr. Black had expressed an opinion about
capabilities completely incompatible with working, and, if so,
why those conclusions were rejected.  Because that explanation is
not apparent on this record, a remand is required.

VII.   Recommended Decision

        Based on the above discussion, it is recommended that the
Plaintiff's statement of errors be sustained to the extent that
the case be remanded to the Commissioner for further proceedings
pursuant to 42 U.S.C. §405(g), sentence four.

VIII.   Procedure on Objections

        If any party objects to this Report and Recommendation,
that party may, within fourteen (14) days of the date of this
Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
